Clarence J. Henry, J.
This is an application whereby the petitioner, a religious corporation, seeks to invoke judicial reversal of a determination of the Zoning Board of Appeals of the City of Rochester, made on April 6,1961, which denied petitioner a variance on real property owned by it and located at the northeast corner of Park Avenue and Meigs Street, in the City of Rochester.
Historically, the property, of 200 by 100 foot rectangular!ty, supported a building used and occupied by the petitioner for many years as a synogogue. On January 23, 1960, the building was so thoroughly consumed by fire that petitioner was required *91 by the city to raze the remaining stone walls, at some considerable expense.
The since leveled plot is included in a block bounded by Park Avenue on the south, Meigs Street on the west, East Avenue on the north, and Arnold Park on the east. The area is one of those designated by section 91-3 of the Ordinances of the City of Rochester as a so-called residential “ R-5 ”, or high density elevator apartment use, district. The uses to which such a district are limited are those permitted in “ R-l ”— “one family” — districts (among others, single-family dwellings, churches, public and parochial schools, museums, libraries and art galleries, public parks, playgrounds and community centers) ; those permitted in “R-2”- — -“two family” — districts (among others, two-family dwellings, schools and colleges, limited public buildings, and private noncommercial recreation areas); those permitted in “ R-3 ” — “ walk-up apartment ” — districts (among others, multiple dwellings, fraternity and sorority houses, nurseries, schools for nonacademic instruction); those permitted in ‘ ‘ R-4 ” — “ low density elevator apartment ’ ’ —'districts (among others, all dwellings, including multiple and row, churches, libraries, museums, art galleries and public parks, offices for religious and charitable organizations, and educational dormitories); and finally, special “R-5” — “ high density elevator apartment” — uses (among others, apartment buildings, professional offices and offices of financial, insurance, civic, educational, religious and philanthropic organizations).
The portion of Park Avenue immediately opposite the petitioner’s premises is a commercial zone and is principally occupied by business establishments for some distance either way.
On January 20,1961, the petitioner contracted to sell the above premises, plus a house and lot owned by it and lying immediately to the east, to the Sibarco Oil Company, the contract being contingent upon obtaining a variance to permit the erection of a gasoline service station. An application was thereupon made to the Superintendent of Buildings, which was denied on February 8, 1961. Two days later appeal was taken to the Zoning Board of Appeals, under section 91-21, III, (3) of the city ordinances, for a variance, on the ground of unnecessary hardship. On April 6, 1961, after a hearing and an inspection of numerous exhibits and the premises, the Board of Appeals denied the appeal. The findings of the board, filed in connection with the denial, held that the petitioner’s proof had failed to show (1) that the property could not yield a reasonable return if used only for “ R-5 ” district purposes, (2) that the petitioner’s plight was owing to unique circumstances, and (3) that the pro *92 posed variance would not alter the essential character of the locality. The determination of the Board of Appeals is now brought before this court for reversal on the ground that it was arbitrary, capricious, unreasonable and discriminating.
At the outset it must be recognized that Zoning Boards of Appeals generally (General City Law, § 81) and specifically in the City of Rochester (Zoning Ordinance, § 91-21, III, 3), are necessarily clothed with wide discretion in determining whether or not á use variance shall be granted, and a court will not substitute its own discretion, nor otherwise interfere with the exercise of such discretion unless the record clearly discloses that it has been abused (see Matter of Larkin Co. v. Schwab, 242 N. Y. 330; Matter of Lemir Realty Corp. v. Larkin, 10 A D 2d 1005). To state the rule another way, if the record shows that zoning restrictions inflict unnecessary hardship upon the owner of realty, as hardship is defined by applicable and developed rules, the refusal of a zoning board to grant a variance may be overturned as arbitrary and capricious, but not otherwise.
The basic rules of hardship, now widely recognized and quoted, were leadingly established in the Matter of Otto v. Steinhilber, (282 N. Y. 71). There it was held that hardship permitting a zoning variance exists only where there is proof “ (1) that the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood * * * and (3) that the use to be authorized by the variance will not alter the essential character of the locality ” (p. 76). All three elements must be proved by one who seeks a variance. It is to be noted that Board of Appeals in the instant matter, in findings precisely in accordance with the three-element definition of the Court of Appeals, held that the elements had not been proven, and stated the reasons therefor. The question to be answered here, then, is whether those findings are sustained by the record, or not, bearing in mind that the burden of proof in demonstrating such elements of unnecessary hardship rested upon the petitioner (Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39; Matter of Plain-Pike Realty Co. v. Sanford, 10 A D 2d 644).
First considered is the query as to whether there was adequate showing by the petitioner that a reasonable return could not be obtained if the property were used for a permitted 1! R-5 5 ’ purpose. Here the opinion in the relatively recent (Matter of Forrest v. Evershed, 7 N Y 2d 256), which further delineates the requirements of Matter of Otto v. Steinhilber (282 N. Y. 71, supra) appears as a guide. In that case Judge Fboessel, *93 quoting People ex rel. Fordham Manor Ref. Church v. Walsh (244 N. Y. 280) and Matter of Crossroads Recreation v. Broz (4 N Y 2d 39, supra) held that “ Upon review, a variance may not be sustained [or, it follows, its denial reversed — -insertion mine] unless 1 the hardship and its occasion [are] exhibited fully and at large ’ in the return of the proceedings ” (p. 261); that failure of the return to show that diligent and bona fide efforts had been made to sell the property to a permitted user, the means employed to effect such a sale, and the terms and conditions upon which it was offered, were regarded as fatal defects of proof, as was failure to demonstrate by some 1 e dollars and cents proof ’ ’ that a reasonable return could not be obtained under “ each and every permitted use under the ordinance”. Applying these later developed — and more pointedly demanding — requirements to the instant matter, it becomes apparent that the petitioner’s proof in connection with the element of “ reasonable return ’ ’ is deficient. While the minutes of the hearing include statements of petitioner’s counsel that the property had been listed with realtors for about one year, that a sign had been erected on the property, and that the only written offer had come from the Sibarco Company, no proof was offered as to the extent of any efforts made by anyone to effect a permitted use sale, the means employed, if any, and the terms and conditions upon which the property was offered; nor, bearing in mind the possibilities of permitted use in district designations “ R-l ”, “ R-2 ”, u R-3 ”, “ R-4 ”, as well as “ R-5 ” — purposely set forth above in principal part, and all applicable to the considered property — does the record include any proof from which it could properly be concluded that a reasonable “ dollars and cents ” return could not be obtained under “ each and every ” of the many uses permitted under the ordinance. (See the itemized requirements set forth in Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39, 44, supra and Matter of Gerling v. Board of Zoning Appeals, 6 A D 2d 250; see, also, Matter of Saitta v. Malone, 26 Misc 2d 817.) True, an opinion of a realtor was placed before the board which contained a generalized statement that the plot would not “ attract at this time an owner-developer for a use consistent with present permissive zoning ”, and his further opinion was supported by another realtor who testified that “ the highest and best use of this site would be a service station ”, such testimony cannot be held to have supplied the necessity of presenting practically irrefragable proof negativing the full range of permissive possibilities, as required by the Forrest, Crossroads Recreation, Gerling and Saitta cases (just cited).
*94 The failure of the petitioner to carry its required burden of proof upon the essential element of “ unreasonable return ” alone requires denial of the application herein. However, brief comment on the remaining two elements is desirable as proof there is also deemed insufficient.
In connection with the petitioner’s plea that its plight is ‘ ‘ unique ’ ’, support is sought to be derived from proof that it was abruptly deprived of the use of its building through fire, that it was impracticable to rebuild upon the same premises, and that petitioner is thus left with a vacant lot of doubtful marketability on its hands, — which it now has an opportunity to sell to a sole, but highly attractive, bidder. Because of the nature and unquestionably fine character of the petitioner as a respected religious congregation, and the recognized fiscal and other problems incident to the securing of appropriate premises elsewhere and the erection thereon of its place of worship, excitement of the sympathy of any court sitting in judgment is an inevitable sequella, and yet, such facts do not constitute circumstances which the law views as ‘ ‘ unique ’ ’. It is not uniqueness of the plight of the owner, but uniqueness of the land causing the plight, which is the criterion. In cases of this nature, proof of peculiarities of size or shape, inherent in the considered land, which exclude its adaptability for any permitted use, have been required (see Matter of Crone v. Town of Brighton, 19 Misc 2d 1023). Here the lot is normally rectangular in shape, of goodly size, and hampered by no peculiar handicaps not shared by others in the area. It is not, because of the qualities of its own identity, at a singular disadvantage, and the record discloses no showing that in itself it is impracticable, by reason of uniqueness, for any of the permitted uses. The proof therefore fails in this element.
Before reaching the third and last element, the following comment should be made: The fact that gasoline stations have been permitted, in variance, elsewhere on Park Avenue, as indicated by the record, is not productive of a valid claim of discrimination. Nothing appears in the return as to the conditions under which such variations were granted, and the conditions may have been entirely dissimilar (see Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39, 47, supra), or, for all that is known, the granting of such variances may since have become, in the matured consideration of the board, ill-considered, or perhaps erroneous, acts. Nor is the fact that the portion of Park Avenue opposite the petitioner’s premises is a commercial zone to be regarded as material. If there is to be zoning, then, of necessity, there must be dividing lines, and some will be sharp indeed. It is *95 the nature of the block in which the variance is sought which controls, not the character of areas which lie adjacent, for the block is the most apt and practicable item of municipal geography to deal with in the establishment and preservation of zone character (see Matter of Socony Mobil Oil Co. v. Town Board of Town of Elmira, 11 A D 2d 848).
Finally, on the question as to whether the granting of the variance sought would “ alter the essential character of the locality ’ ’, it is not beyond suspicion that the initiation of a gasoline service station into a block instantly homogeneously residential presents menace of sharp alteration. There is appeal in the suggestion of one of the intervenors that, of all invaders of residential blocks, a gasoline service station is among the most distasteful and most calculated to change the quality of the area. The Rochester City Council recently displayed alarm by the unanimous adoption, on February 23, 1960, of a resolution notifying the Board of Appeals of the Council’s emphatic disfavor of granting gasoline service station variances in or contiguous to residential areas (Resolution No. 60-18, int. no. 4, Jan. 12, 1960 — one of the exhibits before the board in the instant matter). This resolution, while not having the effect of law, is nevertheless instructive as a reflection of the general public belief concerning the effect of gas stations in residential areas. Such institutions naturally contemplate lively activity over long hours — often all 24 hours — of each day, with incidental, and unpreventable, congestion, noise, light and odors. It seems but a reasonable consequence that the introduction of so vigorous a variance into the integrity of a presently virginal residential block would not only initiatorily alter the area but would stimulate a process which in time would completely divert its complexion. The residents of the area have a perceptibly jealous stake in the continuance of their residential comfort and land values which cannot be ignored. “ Zoning laws ”, said Presiding Justice Williams in the Matter of Gerling v. Board of Zoning Appeals (6 A D 2d 247, 252, supra) “ are intended to bring about conformity with a chosen standard. In the Matter of Harbison v. City of Buffalo (4 N Y 2d 553, 559-560) the Court of Appeals has very recently said: “ the policy of zoning embraces the concept of the ultimate elimination of nonconforming uses, and thus courts favor reasonable restriction of them. ’ ’
The conclusion is that the petitioner has not sustained the burden imposed upon it by law of showing that the Board of Appeals abused its discretion in the determination herein; that unnecessary hardship within the developed rules of defining *96 reasonable return, uniqueness, and alteration, has not been displayed by the proof; and that the action of the board cannot, therefore, be held to have been arbitrary, capricious or discriminatory. Application denied.