Rockingham
No. 78-165

## J. Harold E. Carbonneau

v.

## Town of Exeter

April 20, 1979

*Bernard J. Robertson,* of Exeter, by brief and orally, for the plaintiff.

*Kearns & Colliander,* of Exeter (*Peter F. Kearns* orally), for the town of Exeter.

LAMPRON, C.J.   This case raises issues concerning the nature of proof necessary to obtain a commercial use variance, and the validity of the Exeter zoning ordinance. Plaintiff is the owner of property located on the corner of Lincoln and Front Streets in Exeter. The property consists of a 26-room wood house and an unattached barn, which is presently used for storage. Since 1953, the plaintiff has lived

in this house and has operated a funeral parlor on the bottom floor and rented apartments on the upper floors. The area in which the plaintiff's property is located is zoned, "R-2 single family residential"; the plaintiff's business and apartments are allowed as a preexisting nonconforming use.

Plaintiff wants to convert the bottom floor of his barn into a beauty parlor that his son can operate. In November of 1976, plaintiff filed an application for a commercial use variance with the Exeter Board of Adjustment. At a hearing before the board, the plaintiff presented evidence to demonstrate that a hardship existed because the funeral business made it difficult to keep tenants for his apartments; that the funeral business would eventually be discontinued because of Mr. Carbonneau's age; that the beauty parlor would have adequate parking on the premises; and that the proposed use would enhance the value of the surrounding property. Eleven neighbors testified against the granting of the variance. The essence of their testimony was that the commercial use would devalue their property, and that such a use should be discouraged in a residential zone. In addition, a petition containing the signatures of forty-four persons who were opposed to the proposed variance was presented to the board.

The board found that:

> no hardship was clearly demonstrated in that the building had some residential potential; property values of the surrounding area would be negatively affected by such an increase in commercial use; opposition to the proposal demonstrated the nature of the neighborhood would be adversely affected; the spirit and intent of the ordinance would be violated by such a use.

Consequently, the board denied the variance.

After the board denied a motion for reconsideration, plaintiff filed an appeal in superior court pursuant to RSA 31:77. In addition to challenging the board's denial of the variance, plaintiff also challenged the constitutionality of the Exeter zoning ordinance. Specifically, he claimed that the present ordinance was unreasonable as applied to him and hence constituted a confiscatory taking and that the ordinance was improperly enacted. After a hearing, the Master (*Perkins*, J.) found that the variance should be granted and held that the zoning ordinance was unreasonable as applied to plaintiff's property. The master, however, upheld the validity of the enactment of the Exeter zoning ordinance. The master's findings and rulings were

approved by *Goode,* J. Both parties took exceptions to the master's rulings and findings, and a reserved case was transferred by *Cann,* J.

I. *The Variance*

We first address the issue whether the superior court erred in overturning the Exeter Zoning Board of Adjustment's denial of plaintiff's application for a variance. Under the provisions of RSA 31:77 and 31:78, the superior court has the power to overturn the board's determination when it concludes that the order is unlawful, or when it "is persuaded by the balance of probabilities, on the evidence before it, that [the] order or decision is unjust or unreasonable." RSA 31:78; *Cook v. Town of Sanbornton,* 118 N.H. 668, 670, 392 A.2d 1201, 1202 (1978); *Liolis v. Franklin Zoning Bd. of Adjustment,* 118 N.H. 928, 929, 395 A.2d 1255, 1256 (1978). The burden of proof on these issues is on the plaintiff. RSA 31:78.

In order for an applicant to obtain a variance from the zoning board of adjustment, or for the superior court to order the board to grant a variance, as was the case here, the statutory requirements of RSA 31:72 III must be met. These requisites, recently reiterated in *Pappas v. City of Manchester Zoning Bd.,* 117 N.H. 622, 625, 376 A.2d 885, 887 (1977), are:

> (1) no diminution in value of surrounding properties would be suffered; (2) granting the permit would be of benefit to the public interest; (3) denial of the permit would result in unnecssary hardship to the owner seeking it; (4) by granting the permit substantial justice will be done; (5) the use must not be contrary to the spirit of the ordinance.

Under the terms of RSA 31:72 III, a requisite for a variance that is absolutely essential is that, "owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship" to the applicant. Furthermore, it is also well established in this State and elsewhere that to warrant the granting of a variance based upon a finding of "unnecessary hardship" there must be something special about the applicant's property "to distinguish it from other land in the same area with respect to its suitability for the use for which it is zoned." *Hanson v. Manning,* 115 N.H. 367, 369, 341 A.2d 764, 765 (1975); *Garibaldi v. Zoning Bd. of Appeals,* 163 Conn. 235, 238, 303 A.2d 743, 745 (1972).

A variance by definition is granted with respect to a piece of property and not with respect to the "personal needs, preferences, and circumstances" of a property owner. *Garibaldi v. Zoning Bd. of Appeals,*

163 Conn. at 239–40, 303 A.2d at 745; *Stice v. Gribben-Allen Motors, Inc., Parsons,* 216 Kan. 744, 750, 534 P.2d 1267, 1272 (1975). Once granted, a variance can be enjoyed by both present and subsequent owners of the land. 3 R. ANDERSON, AMERICAN LAW OF ZONING § 18.30, at 218 (2d ed. 1977). Therefore "[i]t is not uniqueness of the plight of the owner, but uniqueness of the land causing the plight that is the criterion," for unnecessary hardship. 3 R. ANDERSON, AMERICAN LAW OF ZONING § 18.30, at 219 (2d ed. 1977), *quoting Congregation Beth El v. Crowley,* 30 Misc. 2d 90, 217 N.Y.S.2d 937, 942 (1961).

Plaintiff bought the 26-room wood frame building with a barn in 1953. He has operated a funeral home in the main building for many years, and continues to because he intends to sell his business at some time as a going concern. He has three apartments in the main building, two of which were leased at the time of the court hearing. His principal complaints of hardship appear to be that the funeral business makes it difficult to attract and keep tenants in his premises.

Plaintiff's youngest son is a hairdresser. Plaintiff wants his son to establish a beauty parlor in the barn on his premises and also wants to build four apartments. According to the plaintiff, his son "is single, 28 years old, very capable and I hope to have him take this place. That was my intention always. If my son can't keep it going, it means we have to sell it."

The fact that the property may be more profitably utilized by the owner by expanding the use of the business property does not warrant a finding of unnecessary hardship so as to result in the granting of the variance. *Simoneau v. Nashua,* 112 N.H. 18, 287 A.2d 620 (1972); 82 AM. JUR. 2d *Zoning and Planning* § 268 (1976). The record does not support a finding and ruling that the restrictions of the "R-2" single family residential zone in which plaintiff's property is located affects the property in a manner different from the way they generally affect all parcels in that same district. In other words, the evidence demonstrates no "special conditions" which would distinguish plaintiff's property from other property in the area so as to warrant a variance based upon unnecessary hardship. RSA 31:72 III; *Hanson v. Manning,* 115 N.H. 367, 341 A.2d 764 (1975). A fortiori, the record does not compel the granting of a variance as ordered by the superior court. Its decree to that effect is therefore vacated.

II. *Reasonableness of Zoning Classification*

The town also challenges the master's finding that the "R-2" district is unreasonable and arbitrary as applied to the plaintiff's property. "The determination of this question requires a balancing of

the injury or loss to the landowner against the gain to the public." *Metzger v. Town of Brentwood*, 117 N.H. 497, 501, 374 A.2d 954, 957 (1977). In this jurisdiction zoning ordinances are "presumed valid." *Town of Surry v. Starkey*, 115 N.H. 31, 33, 332 A.2d 172, 175 (1975); *Bosse v. City of Portsmouth*, 107 N.H. 523, 530, 226 A.2d 99, 105 (1967). Consequently, the complaining landowner has this burden to overcome. We hold that plaintiff did not sustain his burden before the master.

The loss to the plaintiff by the existence of this residential zone is insignificant. Unlike the plaintiff in *Metzger*, plaintiff is not deprived of all beneficial use of his land. *See Flanagan v. Town of Hollis*, 112 N.H. 222, 293 A.2d 328 (1972); *see generally* 1 R. ANDERSON, AMERICAN LAW OF ZONING § 3.26 (2d ed. 1976); 1 A. RATHKOPF, THE LAW OF ZONING AND PLANNING § 6.04 (4th ed. 1978). Plaintiff presented no evidence that his property was not suitable for residential use. In fact, plaintiff admitted at trial that the apartments in his house were presently rented for residential use. It is true that the market value of plaintiff's property would be enhanced by allowing an additional commercial purpose. This factor alone, however, "does not in and of itself void a zoning restriction." 8 E. MCQUILLIN, MUNICIPAL CORPORATIONS § 25.44, at 102 (3d rev. ed. 1976); 1 A. RATHKOPF, THE LAW OF ZONING AND PLANNING § 6.04 (4th ed. 1978).

■ Plaintiff challenges the reasonableness of the zoning ordinance as applied to his property. Specifically, he argues that the present zoning ordinance does not preserve the residential character of the neighborhood, because there is no residential character to preserve. It is beyond question that zoning regulations that promote and preserve the integrity of a residential neighborhood are a valid exercise of police power, *Village of Belle Terre v. Boras*, 416 U.S. 1 (1974), so long as the effect is reasonable and nondiscriminatory. *Beck v. Town of Raymond*, 118 N.H. 793, 800, 394 A.2d 847, 852 (1978); *see generally Developments in the Law—Zoning*, 91 HARV. L. REV. 1450–57 (1978). It is also true, however, that existing uses of adjacent land may render the "residential value of the land in question . . . so small as to warrant the conclusion that the owner's property will be taken if the [residential use] is enforced." 1 R. ANDERSON, AMERICAN LAW OF ZONING § 3.29, at 164 (2d ed. 1976). The validity of this zoning classification, therefore, depends on "whether the subject property is zoned in conformity with surrounding existing uses and whether those are uniform and established." *Gregory v. City of Wheaton*, 23 Ill. 2d 402, 406, 178 N.E.2d 358, 360 (1961); *see Bosse v. City of Portsmouth*, 107 N.H. 523, 530–31, 226 A.2d 99, 105–06 (1967); *see generally* 8 E. MCQUILLIN, MUNICIPAL CORPORATIONS § 25.104 (3d rev. ed. 1976).

The subject property is located on the north side of Front Street and on the west side of Lincoln Street, where the two streets intersect. This location is not on the boundary line of a residential zone; rather, it is within the zone. Except for Mr. Carbonneau's nonconforming use, the surrounding neighborhood is predominantly residential. There are no commercial establishments abutting Mr. Carbonneau's property. On Front Street, across from the subject property, there are two single family homes, and across Lincoln Street, there is a church and rectory. Gill Street intersects with Front Street across from the subject property, and all the property on this street is residential. Although there are multi-family homes interspersed on Lincoln Street, to the north of the subject property the street is primarily residential with the exception of one nonconforming commercial use, a flower shop. The weight of the evidence is that the character of the neighborhood remains residential.

The record convincingly demonstrates that the present residential classification of the subject property is in conformity with the use of the surrounding property. Consequently, the trial court's finding that the R-2 classification is arbitrary and unreasonable cannot stand. *See Fairfield Savings & Loans Ass'n v. City of Chicago*, 45 Ill. App. 3d 266, 359 N.E.2d 1040 (1977); *see generally* 1 R. ANDERSON, AMERICAN LAW OF ZONING, §§ 3.29, 3.33 (2d ed. 1976).

III. *Enactment of Exeter Zoning Ordinance*

Plaintiff challenges the 1976 Exeter zoning amendment on the ground that it was enacted without proper notice. Specifically, he contends that the published notice was misleading and failed to apprise members of the community of the ramifications of the proposed amendment. "[N]otice requirements are mandatory." *R. A. Vachon & Son, Inc. v. City of Concord*, 112 N.H. 107, 111, 289 A.2d 646, 649 (1972). The notice must be reasonably sufficient "to inform the public of the essence and scope of the zoning regulation under consideration." 1 R. ANDERSON, AMERICAN LAW OF ZONING § 4.14, at 206 (2d ed. 1976); *R. A. Vachon & Son, Inc. v. City of Concord*, 112 N.H. 107, 289 A.2d 646 (1972); *Schadlick v. City of Concord*, 108 N.H. 319, 234 A.2d 523 (1967). "[T]here is as a matter of necessity a presumption in all cases that an ordinance has been properly passed." 6 E. MCQUILLIN. MUNICIPAL CORPORATIONS § 22.34, at 380 (3d rev. ed. 1969); 1 A. RATHKOPF, THE LAW OF ZONING AND PLANNING § 10.14 (4th ed. 1978). Consequently, the plaintiff has the burden to prove the illegality of the notice.

The particular notice in question, the second publication, read: "An amendment to the Town of Exeter Zoning Map by delineat-

ing the boundary lines between districts to follow property lines, streets, rivers, and power lines as shown on the map displayed in the Town Clerk's Office." We regard this notice as legally sufficient to advise the town's populace of the scope of the proposed zoning ordinance. *See R. A. Vachon & Son, Inc. v. City of Concord*, 112 N.H. 107, 111–12, 289 A.2d 646, 649 (1972) (published notice of terms " comprehensive plan" held to be adequate.) In addition, the notice stated where the proposed zoning map could be viewed. It is thus clear that the zoning map was to be incorporated by reference as part of the proposed amendment. *See Burmore v. Smith*, 124 N.J.L. 541, 546, 12 A.2d 353, 355 (1940). The plaintiff does not contend that the map on file was in any way misleading, or that it was substantially different from the zoning map that was finally adopted. In sum, we hold that the notice in question and the zoning map incorporated by reference to the notice were legally adequate to apprise a person of the proposed zoning amendment. The master was correct in upholding the validity of the enactment of the 1976 Exeter zoning amendment.

*Plaintiff's exceptions overruled;*
*defendant's exceptions sustained.*

All concurred.