Merrimack,
No. 6304.

R. A. VACHON & SON, INC. *v.* CITY OF CONCORD.

March 31, 1972.

*Hall, Morse, Gallagher & Anderson* (*Mr. G. Wells Anderson* orally) for the plaintiff.

*Leonard J. Merski,* city solicitor, by brief and orally, for the defendant.

KENISON, C.J. Plaintiff appeals from a decision of the Zoning Board of Adjustment of the City of Concord denying its application for a building permit on the ground that the proposed building lot failed to meet the dimensional requirements of the amended 1967 Zoning Ordinance. Following denial of its appeal (RSA 31:69) and motion for rehearing (RSA 31:74), plaintiff appealed to the superior court (RSA 31:77) and the case was reserved and transferred to this court by *Flynn,* J.

The following questions were reserved and transferred: "1. Can the City of Concord validly amend its Zoning Ordi-

nance to increase the dimensional requirements for lot sizes that will be binding upon a subdivision previously approved by the City?

"2. If the answer to Question 1 is yes, is the savings clause set forth in Paragraph 12 of the Agreed Statement of Facts valid or invalid as it applies to the Plaintiff's sub-division?

"3. If the answers to Question 1 and 2 are yes, does the action of the City in amending its Zoning Ordinance constitute a taking by eminent domain for which the Plaintiff is entitled to be awarded damages?"

The case has been submitted on an agreed statement of facts. On August 5, 1958, the R. A. Foster Engineering Corp., secured the approval of the Concord Planning Board to a layout of certain lots situated in the Conant Park area of Concord, in the county of Merrimack, State of New Hampshire. RSA 36:19, 19-a. At the time of said approval, all lots conformed with lot area and frontage requirements of the existing zoning ordinance. Subsequently, a portion of the subdivision was developed. On October 17, 1967, plaintiff R. A. Vachon & Son, Inc., purchased a portion of the property within the subdivision. The area within the parcel purchased was undeveloped land. Then, on November 13, 1967, the city of Concord amended its municipal code of ordinances following compliance with statutory requirements of posting and publishing notices and holding a public hearing prior to passage. RSA 31:63. The new ordinance increases the requirements for minimum lot frontage and minimum total area. On February 26, 1968, plaintiff requested a permit from the building inspector of the city of Concord to construct a building on a lot contained within its portion of the subdivision. Though the lot in question met the amended frontage requirement, it was denied because the total area was less than permitted and also the plaintiff did not qualify for the nonconforming lot exemption from the terms of the amended ordinance as it owned property adjacent to the proposed building lot. City of Concord Zoning Ordinance, tit. IV, art. 3, s. 28.5 (1967).

Plaintiff contends that a change in the zoning law cannot affect a subdivision previously approved by the city of Concord through its planning board in accordance with its sub-

division ordinance (*see* RSA 36:19, 19-a) and that, at the least, due process requires that a person having a "vested right or legal use" should be given actual individual notice that the proposed change will void his approved subdivision plot.

"[I]t may be noted that there is no claim before us that the plaintiffs have acquired any vested rights from the city based on estoppel . . . . Without passing on these matters in this case, it will be observed that success on these grounds has been infrequent in this state and in most other jurisdictions. *Dumais* v. *Somersworth,* 101 N.H. 111, 115; Annot., 6 A.L.R.2d 960." *Arsenault* v. *Keene,* 104 N.H. 356, 357, 187 A.2d 60, 61 (1962). Though the cited authority relates to problems involving vested rights arising from the issuance of building permits as opposed to the creation of such rights by means of subdivision approval, the governing principles are substantially similar. In the words of one commentator, "One area in which the principles governing cases in both fields [zoning and planning] are the same is that concerning vested rights; whether the subdivider has the right to continue the development of his subdivision as planned in the face of changed rules and regulations of the planning board, or an amendment to the zoning ordinance which changes the permitted uses or the nonuse restrictions of land covered by the plat, is in great measure governed by the same considerations which determine vested rights under a building permit." 3 Rathkopf, The Law of Zoning and Planning 71-93 (1971).

Accordingly, in the face of a subsequently enacted zoning amendment, no greater right should accrue to plaintiff under the subdivision ordinance than is accorded a landowner who has been issued a building permit. There is substantial authority both here and elsewhere for the proposition that a property owner has no vested right in a zoning classification, as all property is held in subordination to the police power of the municipality. *Brady* v. *Keene,* 90 N.H. 99, 4 A.2d 658 (1939); 1 Anderson, American Law of Zoning *s.* 4.27 (1968); 8 McQuillin, Municipal Corporations *s.* 25.66 (3d ed. 1965 rev. vol.); *Lake Intervale Homes* v. *Parsippany-Troy Hills Twp.,* 28 N.J. 423, 147 A.2d 28 (1958). Even following issuance of a building permit, the only "vested rights" generally recog-

nized are limited to "those of an owner not to have his property rezoned after he has incurred liability or expenses for construction; and they do not preclude a change in restrictions with regard to improved property." 8 McQuillin, Municipal Corporations *s.* 25.95, at 272 (3d ed. 1965 rev. vol.); 2 Rathkopf, The Law of Zoning and Planning 57-2 (1964); 1 Yokley, Zoning Law & Practice *s.* 9.6 (1965). And money spent for the acquisition of the property itself is properly excluded from consideration. 8A McQuillin, Municipal Corporations *s.* 25.188 (3d ed. 1965 rev. vol.); *Rosenzweig* v. *Crinnion,* 126 N.Y.S.2d 692 (Sup. Ct. 1953); *Anderson* v. *City Council,* 229 Cal. App. 2d 79, 40 Cal. Rptr. 41 (1964).

In the absence of a statute providing otherwise, even final approval of a subdivision plot by the planning board under authority of RSA 36:19, 19-a, does not place the lots beyond the authority of zoning changes. 3 Anderson, American Law of Zoning *s.* 19.23 (1968); *York Township Zoning Board of Adjustment* v. *Brown,* 407 Pa. 649, 182 A.2d 706 (1962); *see Blevens* v. *Manchester,* 103 N.H. 284, 170 A.2d 121 (1961). *See also* Vol. 3, No. 3, N.H.B.A. Newsletter of the Section on Real Property, Probate and Trust Law, p. 2 (Feb. 25, 1972). Examples of legislation permitting approved development despite subsequent applicable amendment, for which the New Hampshire Legislature has not provided, are Mass. Gen. Laws Ann. ch. 40A, *s.* 7A; Conn. Gen. Stats. Ann. *s.* 8-26a; 63 Pa. Stats. Ann. *s.* 10508(4)(supp.). *See also Friendship Bldrs., Inc.* v. *West Brandywine Tp. Zoning Bd.,* 1 Pa. Comm. 25, 271 A.2d 511 (1970); 1 Rathkopf, *supra* at 27-41. Of course, vested rights may accrue where a subdivider's position has changed by installation of substantial improvements in reliance upon the grant of final approval. 3 Rathkopf, *supra* at 71-101.

The plaintiff was not prejudiced by its failure to receive actual individual notice of the proposed zoning amendments. Those courts which have considered the question have held rather uniformly that the contention that actual notice must be received by those who might be affected by a zoning amendment is groundless and not constitutionally required. Annot., 96 A.L.R.2d 449, *s.* 4, at 459 (1964). Though notice requirements are mandatory, constructive notice sufficient to apprise those interested in the proposed changes satisfies

these requirements. The published notice here given of a "comprehensive revision" was adequate. *Schadlick* v. *City of Concord,* 108 N.H. 319, 234 A.2d 523 (1967).

The first question transferred by the court was "1. Can the City of Concord validly amend its Zoning Ordinance to increase the dimensional requirements for lot sizes that will be binding upon a subdivision previously approved by the City?" Our answer is "Yes."

We will consider the second question presented only in relation to the finding of the Concord Zoning Board of Adjustment, in denying plaintiff's application for a building permit for lot No. 86, that said lot did not meet the requirements of paragraph 28.5 of the Zoning Ordinance of the City of Concord. Paragraph 28.5, the so-called "savings clause" of the ordinance, states, "Non-Conforming Lots — In any district in which structures are permitted, a structure may be erected on each lot which was a lot-of-record at the date of adoption or amendment of this ordinance, even though such lot fails to meet the requirements for area or width, or both, that are applicable in the district, provided such lot is not of continuous frontage with other lots in the same ownership . . . ." Though plaintiff's lot meets the new frontage requirements, it does not meet area requirements. Moreover, plaintiff also owns the adjacent property and the two lots combined would bring him within the provisions of the new ordinance. For these reasons, the permit was denied.

We assume the question presented goes to the constitutionality of the provision as applied to plaintiff's subdivision and hold that it was properly applied and validly enacted. "Provisions in zoning ordinances establishing minimum lot areas and minimum width, or 'frontage' of lots, upon which dwellings may be erected have generally been upheld as a means of regulating the density of population and of assuring a desired quantum of light and air to the inhabitants of such dwellings. However, such provisions are invalid as to lots which, at the time of enactment of such restrictions, are 'substandard,' i.e., having a smaller size or having a lesser frontage than the required minimum, if such lots would thereby be rendered completely valueless." 1 Rathkopf, The Law of Zon-

ing and Planning 32-1 (1960); 2 Anderson, American Law of Zoning *s.* 8.49(1968); 2 Metzenbaum, Law of Zoning ch. X-1 (2d ed. 1955). Plaintiff makes no contention that his property would be rendered "valueless," but only that it would be decreased in value because of the necessity of combining adjacent lots to meet the area requirements of the amended ordinance. The purpose of this "savings clause" is to avoid a confiscatory result and to insure some relief to the owner of a substandard lot from the strict and literal enforcement of the ordinance while at the same time promoting the health and general welfare of the community. 8 McQuillin, Municipal Corporations *s.* 25.46 (3d ed. 1965 rev. vol.). It is not the purpose of the ordinance to insure to a landowner affected the same return he could have realized prior to its passage. *Id. s.* 25.44.

Finally, in response to plaintiff's contention that he should be deemed to have a "lawful pre-existing use" within the Concord Zoning Ordinance, tit. IV, art. III, *s.* 28.6 "Non-Conforming Uses", we say only that this section was intended to apply to a use in fact existing on the land at the time of adoption of a new zoning ordinance. That, and that alone, may be continued. Here, plaintiff took no action and incurred no liability until after the zoning amendment. *Ardolino* v. *Florham Park Bd. of Adjustment,* 24 N.J. 94, 130 A.2d 847 (1957); *Arsenault* v. *City of Keene,* 104 N.H. 356, 187 A.2d 60 (1962); 2 Rathkopf, *supra* at 57-1 n.1. Though the scheme plaintiff advances in his brief as regards the effect of amendments on lots in approved subdivisions might be legislated, his remedy does not lie with us. We will not, through the back door, seek to accomplish what the legislature has not found fit to do in the first instance. Substitution for and qualifications and variations of enacted law are legislative and not judicial prerogatives. *Trustees of Phillips Exeter Academy* v. *Exeter,* 92 N.H. 473, 33 A.2d 665 (1943).

As the answers to the first two questions presented establish a lawful and reasonable exercise of the police power in accordance with the enabling statute, RSA 31:60, we accordingly hold that the amended ordinance does not constitute a taking by eminent domain, and the answer to the third

transferred question is "No." Marcus and Groves, The New Zoning: Legal, Administrative, and Economic Concepts and Techniques 79-81 (1970); Annot., 11 A.L.R.2d 524(1950).

*Plaintiff's exceptions overruled; remanded.*

All concurred.